# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| IKORONGO TEXAS LLC and IKORONGO TECHNOLOGY LLC, | Civil Action No. 6:20-cv-00256-ADA |
| Plaintiffs, vs. | **JURY TRIAL DEMANDED** |
| BUMBLE TRADING LLC, | |
| Defendant. | |
| IKORONGO TEXAS LLC and IKORONGO TECHNOLOGY LLC, | Civil Action No. 6:20-cv-00257-ADA |
| Plaintiffs, vs. | **JURY TRIAL DEMANDED** |
| LG ELECTRONICS INC., and LG ELECTRONICS U.S.A., INC., | |
| Defendants. | |
| IKORONGO TEXAS LLC and IKORONGO TECHNOLOGY LLC, | Civil Action No. 6:20-cv-00258-ADA |
| Plaintiffs, vs. | **JURY TRIAL DEMANDED** |
| LYFT, INC., | |
| Defendant. | |
| IKORONGO TEXAS LLC and IKORONGO TECHNOLOGY LLC, | Civil Action No. 6:20-cv-00259-ADA |
| Plaintiffs, vs. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

## <u>PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF</u>

Page

I.   INTRODUCTION ……………...………………………………………………1

II.  OVERVIEW OF PATENTS-IN-SUIT ...…………………………………………2

    A.   The Reissue Patents………………………………………………………2

    B.   The '554 Patent …………………………………………………………..3

III. CLAIM CONSTRUCTION ANALYSIS …......………………………………..4

    A.   The Reissue Patents………………………………………………………4

        1.   "record[s/ed]" ('450 Patent, claim 67; '543 Patent, claims 32,
             39, 54-57, 71-73, 75; '704 Patent, claims 33, 46, 48) ……………………..5

        2.   "collect the visited geographic location data for geographic
             location data for geographic locations visited by the location
             aware device" ('543 Patent, claims 45-49, 51; '704 Patent,
             claims 46 and 48) ……………………………………………………8

        3.   "categories" ('450 patent, claim 67; '543, patent claim 46;
             '704 patent, claims 36 and 37) …………………………………………9

        4.   "comments" ('543 patent, claim 51) …..………………………………9

        5.   "detection network directory" ('704 patent, claims 33, 46, 48) ………….11

        6.   "recorded by the location-aware cellular phone device
             using a satellite-based location-fixing protocol and a
             detection network directory" ('704 patent, claims 33, 46, 48) ……………13

        7.   "enabling definition of rights of the one or more
             buddies to access the visited geographic location data"
             ('543 Patent claims 32, 54, 73, 75); "enable definition of
             rights of the one or more other users to access the
             visited geographic location data" ('543 Patent claim 72);
             "enabling definition of access rights for the one or
             more other users to access the visited geographic location data"
             ('543 Patent claim 48) ('704 Patent claim 33); "enable
             definition of access rights for the one or more other users
             to enable access to the visited geographic location data"

('543 Patent claims 45, 46, 47, 49, 51); ('704 Patent claim 46); "enable definition of access rights for the one or more other users to allow for access to the visited geographic location data" ('704 Patent claim 48); "enable definition of rights of the one or more other users to access the visited geographic location data" ('543 patent claim 39); "enable the user to define rights of the one or more other users to access the visited geographic location data" ('543 patent claim 56)....................15

8.    Whether the Preambles of the '543 Patent, Claims 45-49, 51, 72 and the '704 Patent, Claims 46 and 48 are Limiting...........................................................................16

9.    Bumble/Lyft Only Terms: "obtain defined rights of the one or more other users to access the visited geographic location data" ('543 patent claims 55, 71); "obtaining access rights for one or more other users to allow for access to the visited geographic location data" ('543 patent claims 57, 70)................................................ ...18

B.    '554 Patent (Samsung and LG only)...................................................... 18

1.    "receive an identification of a geographic area" / "receiv[e/ing], via the user device, an identification of a geographic area" ('554 patent claims 1, 17, 33) ..................................................18

IV.    CONCLUSION.........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avid Tech., Inc. v. Harmonic, Inc.*,
  812 F.3d 1040, 1045 (Fed. Cir. 2016) ....................................................................... 7

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
  55 F.3d 615, 620 (Fed. Cir. 1995) ........................................................................... 16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801, 808 (Fed. Cir. 2002) ........................................................................ 16

*Phillips v. AWH Corp.,*
  415 F.3d 1303, 1312 (Fed. Cir. 2005) ...................................................................... 5

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
  378 F.3d 1396, 1410 (Fed. Cir. 2004) .................................................................... 16

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
  962 F.3d 1362, 1367 (Fed. Cir. 2020) .................................................................... 16

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362, 1365 (Fed. Cir. 2012) ...................................................................... 5

**Statutes**

35 U.S.C. §112(2) .......................................................................................................... 1

Pursuant to the effective Scheduling Orders in the above noted actions (the "Actions"), Plaintiffs Ikorongo Texas LLC and Ikorongo Technology LLC ("Ikorongo") submit their opening claim construction brief for U.S. Patent Nos. RE 41,450 (the '450 Patent) (Ex. 1)[1], RE 45,543 (the '543 Patent) (Ex. 2), RE 47,704 (the '704 Patent) (Ex. 3) (collectively the "Reissue Patents"), and U.S. Patent No. 8,874,554 (the '554 Patent) (Ex. 4).

The claim construction briefing schedule and *Markman* hearing date are identical in each of the Actions. Accordingly, Ikorongo and the Defendants each agreed to submit a combined brief in the Actions. All four patents are currently asserted against the LG and the Samsung defendants. Only the '543 and '704 Patents are currently asserted against the Bumble and Lyft defendants.

## I.     INTRODUCTION

The Reissue Patents generally relate to methods and apparatus for selectively sharing certain information with selected users, including sharing of location information from a location aware device (e.g., a smartphone) that was collected via a client-side application. The '554 Patent generally relates to the provision of media items based in part on a location.

As demonstrated below, Ikorongo's constructions mostly adopt the plain and ordinary meaning of the claim terms. Where a construction is provided by Ikorongo, it aligns with the intrinsic evidence. In contrast, Defendants seek to import limitations into the claims in furtherance of litigation-induced non-infringement positions and not in concordance with the claim language or other intrinsic evidence. Indeed, Defendants' constructions are inconsistent with Samsung and LG's own positions taken in their IPR Petitions – arguing for narrower constructions here than before the PTAB. Defendants' constructions are likely to confuse, rather than assist, a lay jury as they inject ambiguity.

Finally, while all Defendants asserted various grounds of invalidity under 35 U.S.C. §112(2) in their invalidity contentions, Defendants have waived and/or abandoned any defense

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Howard Wisnia submitted with this brief.

under §112(2).  No Defendant has asserted indefiniteness in their proposed constructions, or timely proposed construction of any other term as indefinite.

## II.    OVERVIEW OF PATENTS-IN-SUIT

### A.  The Reissue Patents

Each of the Reissue Patents is a reissue of U.S. Patent No. 7,080,139 (the '139 Patent) (Ex. 5).  The '139 Patent was filed on April 24, 2001, issued on July 18, 2006, and is entitled "Method and Apparatus for Selectively Sharing and Passively Tracking Communication Device Experiences."  The Reissue Patents all include the same specification, but have different claims. The '450 Patent was filed as Reissue Application No. 12/172,518 on July 14, 2008 (within two years of the issuance of the '139 Patent).  The '542 Patent was filed as Reissue Application No. 13/894,009 on May 14, 2003 and is a part of a line of continuations back to the '450 Patent. Similarly, the '704 Patent was filed as Reissue Application No. 14/577,746 on December 19, 2014, and is a part of a line of continuations back to the '450 Patent.

The Reissue Patents provide the following general overview:

> A common theme among aspects of the present invention is collecting data regarding a user's computer usage experience and sharing that data.  So-called "buddies" identified on buddy lists of instant messaging products can share selected aspects of their computer usage experiences.   Administrative tools and processes can be provided to set up selective collection and sharing of data. Collection tools and processes operate on a variety of computer usage activities and user responses to their computer usage experiences.  Processing tools and methods filter, integrate and correlate the collected data.  Display tools and processes make portions of the data accessible on a pre-defined basis.  Such as according to defined rights of buddies.  Aggregation tools and processes assemble statistics about user experiences across different bases, such as buddy lists, categories of users, and all service participants.

Ex. 2, '543 Patent, 2:45−60.[2]

Certain embodiments are described with reference to a "visited location database ('VLD') 100B." *Id*. at 3:27−28. Among other described features, "the VLD also could store geographic information regarding the location, such as geo-coded data," visited by a location-aware device. *Id*. at 3:44−46. An access control list or "ACL" also can be maintained. Among other described features, an ACL may be used to identify buddies and control their access to visited geographic location data stored in the VLD. *Id*. at 4:4−7. The Reissue Patents provide a detailed description of how "[a] user could set up his or her own ACL via buddy list and access control list administration functions." *Id*. at 4:7−8. In various embodiments, the ACL and VLD interoperate to enable a user to control who may have access to geographic information visited by the user's location-aware device.

### B. The '554 Patent

The '554 Patent was filed on November 1, 2013 as U.S. Application No. 14/069,761 and entitled "Turnersphere." This patent claims priority through a series of continuations and continuations in part back to an ultimate parent application filed December 21, 2007. The '554 Patent describes various methods and systems that provide for generating playlists or providing media items to a user based in part on geographic location data. *See, e.g.,* '554 Patent at 2:27-40.

---

[2] Because the Reissue Patents share a common specification and the '543 Patent is asserted against all defendants, citations to the Reissue Patents will be to the '543 Patent, unless otherwise noted.

## III.    CLAIM CONSTRUCTION ANALYSIS

The presently asserted claims are as follows:

| Party | Asserted Claims: '543 Patent | Asserted Claims: '704 Patent | Asserted Claims: '450 Patent | Asserted Claims: '554 Patent |
|---|---|---|---|---|
| Bumble | 39, 43–46, 55–57, 63, 64, 66, 68–71 | 33–38, 45–47 | | |
| Lyft | 32, 36, 38, 54, 57, 63, 64, 66, 68–70 | 33–36, 38–41, 45–48 | | |
| Samsung/LG | 32, 36, 38, 39, 43–49, 51, 54, 56, 72, 73, 75 | 33–40, 45–48 | 67, 74, 75, 83, 84, 93, 94, 96 | 1–4, 9–12, 17–20, 25–28, 33–36, 39–42 |

### A.  The Reissue Patents

Exemplary asserted claim 45 of the '543 Patent reads as follows, with disputed terms bolded:

45. **A non-transitory computer-readable medium storing software for instructing a controller of a location-aware device that is capable of being registered with a registration server to**:

enable access to one or more lists of other users to identify one or more other users with whom visited geographic location data is capable of being shared;

**enable definition of access rights for the one or more other users to enable access to the visited geographic location data**;

**collect the visited geographic location data for geographic locations visited by the location-aware device using a client-side application**; and

report information indicating at least a portion of the visited geographic location data to a tracking server;

wherein in order to enable the definition of the access rights for the one or more other users to access the visited geographic location data, the software further instructs the controller of the location-aware device to receive, via a user interface of the location-aware device, input that defines at least one user of the one or more other users from the one or more lists of other users that is to have access to the visited geographic location data.

Exemplary asserted claim 57 of the '543 Patent reads as follows, with disputed terms bolded:

57. A method of operation of a server computer comprising:

receiving registration information from a location-aware device;

receiving information indicating visited geographic location data from the location-aware device, the visited geographic location data being data defining geographic locations collected at the location-aware device from a client-side application, wherein the location-aware device **records** the geographic locations using a satellite-based location-fixing protocol;

**obtaining access rights for one or more other users to allow for access to the visited geographic location data, the one or more other users being one or more other users from one or more lists of other users with whom the visited geographic location data is to be shared**; and

sharing at least a portion of the visited geographic location data with the one or more other users according to the access rights defined for the one or more other users.

1. **"record[s/ed]" ('450 Patent, claim 67; '543 Patent, claims 32, 39, 54-57, 71-73, 75; '704 Patent, claims 33, 46, 48)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "preserve[s/ed] for later reporting" |

"The claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). There are only two exceptions to the general rule that claims are given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Id.*

Defendants ignore this controlling law and seek to unduly limit the claim terms and inject ambiguity into otherwise clear terms – which may confuse a lay jury or allow an expert to "interpret the interpretation" in an unfounded manner.

Referring to '543 Patent claim 57, the term is used as follows: "the location-aware device ***records*** the geographic locations using a satellite-based location-fixing protocol . . . ." '543 Patent at 26:35-37 (emphasis added)[3]. The ordinary and customary meaning of "records" does not require preserving *for later reporting*. *See, e.g.,* Ex. 6, (dictionary definition of "record"). While, of course, the ordinary meaning of record is broad enough to include preserving for later reporting, it is not so limited. Rather, the ordinary meaning of record is broad enough, for example, to include (1) data that may be recorded and never reported, (2) data reported concurrent with recording, and (3) data reported after the recording. Indeed, Defendants' own extrinsic dictionary evidence provides no support for an ordinary meaning that requires "later reporting." Neither the claim language nor the ordinary meaning of the claim term supports Defendants' proposal.

Next, the specification does not redefine "record" in some manner different from the plain and ordinary meaning, or require that "record" mean preserve for later reporting. Instead, the specification provides examples of recording without reporting. *See, e.g.,* '543 Patent at 6:46-48 ("activity may still be recorded to a tracking server . . . ***but not reported.***"). Thus, the specification refutes Defendants' proposed construction.

The prosecution history likewise does not compel Defendants' construction. During the meet and confer process, Defendants relied on the following excerpt of the '704 Patent Prosecution History: "Through such a location-aware device automatically and passively recording data defining the geographic locations visited while not operating with its Bluetooth network, such recorded data ***may be*** preserved and then later reported on the devices again operating within the proximity of such network." Ex. 7, excerpt from '704 Patent Prosecution History, 8/30/17

---

[3] Unless otherwise noted, all emphasis is added throughout this document.

6

Amendment at 22. To the extent Defendants are arguing that Ikorongo disclaimed claim scope by this statement, their position fails. Prosecution history disclaimer requires clear and unmistakable disavowal. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable"). Here, the Applicant merely stated that its system is such that data "may be" preserved for later reporting; not that it is required to be preserved for later reporting in all cases. Indeed, Defendants ignore the sentence immediately prior to their quotation that states "Applicant describes 'The Bluetooth device could learn the location visited and report the location immediately. . .'" Ex. 7, 8/30/17 Amendment at 22. Thus, the prosecution history does not require or support Defendants' construction.

In addition, during the meet and confer, Defendants stated the following language supported their construction: "*See also, e.g.*, '543 patent at 12:15-18 ("One or more items in the current context are sent to a buddy and the activity of sending the items is reported to a tracking server to be recorded in the VUD."); *id.* at claim 54 ("reporting information indicating at least a portion of the visited geographic location data to a tracking server"). However, neither citation compels Defendants' construction. In sum, while "record" ***includes*** preserving for later reporting, it is not so limited.

Finally, Defendants themselves have relied upon the plain and ordinary meaning of the term before the PTAB. Defendants Samsung and LG have submitted joint IPR Petitions arguing that no construction of this term is necessary, and their theories of invalidity are not addressed under their proposed construction in this case. Exs 9, 10, 11 (excerpts from Samsung/LG Petitions for IPR). Thus, Defendants are wrongly seeking a broader construction before the PTAB and a

narrower construction here, despite the fact that both tribunals use the same claim construction standard.[4]

### 2. "collect the visited geographic location data for geographic location data for geographic locations visited by the location-aware device" ('543 Patent, claims 45-49, 51; '704 Patent, claims 46 and 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Based on discussions with Defendants, Plaintiffs understand Defendants only seek to construe "collect" in the context of this term:<br><br>Plain and ordinary meaning. | "accumulate for later reporting the visited geographic location data for locations visited by the location-aware device" |

The parties' dispute on this term is essentially the same as above with respect to "record." Defendants are unnecessarily and inappropriately reading into the claim "for later reporting," and potentially confusing a lay jury with ambiguous terminology when the plain and ordinary meaning is clear.

Once again, Defendants' construction is not compelled by the claim language itself, the ordinary and customary meaning of the term "collect," the specification or the prosecution history. During the meet and confer process, Defendants pointed to the same items discussed above with respect to "record" as purportedly supporting their position. For the same reasons set out above, Defendants position fails. Indeed, this is more the case here since Defendants' cites do not concern the term "collect."

Finally, Defendants themselves have relied upon the plain and ordinary meaning before the PTAB. Defendants Samsung and LG have submitted IPR Petitions arguing that no construction of this term is necessary, and their theories of invalidity are not addressed under their proposed construction in this case. Exs 9, 10, 11 (excerpts from Samsung/LG Petitions for IPR).

---

[4] The PTAB no longer uses "broadest reasonable interpretation" for existing patent claims and instead uses the same claim construction standards as this Court in IPRs.

Accordingly, Ikorongo asserts that the plain and ordinary meaning should be adopted.

### 3. "categories" ('450 patent, claim 67; '543, patent claim 46; '704 patent, claims 36 and 37)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "content-based classification[s]" |

Ikorongo maintains that this term is readily understandable by a lay jury and that the plain and ordinary meaning should accordingly control. It is unclear what value or clarity Defendants' proposed construction offers. For example, Defendants' own dictionary extrinsic evidence refers to "categories" as classifications; it is unclear why Defendants seek to further narrow it to only "content-based" classifications. Ex. 8, Defendants' proffered Dictionary Definition for category. To the extent Defendants are seeking to exclude time-based categories, such a construction should fail. The specification provides examples of categorizing by time. *See, e.g.,* '543 Patent at 18:21-32 ("Defined rights of buddies to access tracking data *may be* based on content categories of material accessed. . . Access *may be* further restricted by when the activity potentially accessed took place.").

Finally, Defendants themselves have relied upon the plain and ordinary meaning before the PTAB. Defendants Samsung and LG have submitted IPR Petitions arguing that no construction of this term is necessary, and their theories of invalidity are not addressed under their proposed construction here. Exs. 9, 10, 11 (excerpts from Samsung/LG Petitions for IPR).

### 4. "comments" ('543 patent, claim 51)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "Written text; not solely an emoticon or rating" | "user-generated remarks" |

The disputed term appears in claim 51 as follows "wherein the visited geographic location data further defines **comments** on one or more of the geographic locations visited by the location-aware device." Accordingly, the claim itself does not demand that the comment be user generated. Neither the specification nor the prosecution history limits the ordinary meaning of the term to "user-generated."

The specification does demonstrate, though, that ratings and emoticons are considered to be a different category than comments. For example, Fig. 13 demonstrates the different processing for comments versus emoticons or ratings.



Figure 13

However, the specification does allow for comments to include other information such as emoticons. '543 Patent at 9:62-64 ("The thoughts column 987 may support either free text comments or pick-list comments, **such as** emoticons or user-defined quick comments."). Further the "pick-list" comments referenced in the specification may be pre-generated, and simply selected by the user. *Id.* Thus, a disclosed embodiment of the patent would be excluded under Defendants' proposed construction. Comments include, but are not limited to Defendants' proposal of "user-generated" comments. Ikorongo's proposed construction should be adopted.

### 5. "detection network directory" ('704 patent, claims 33, 46, 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a network directory which reflects the location of wireless devices not solely based on cellular tower triangulation" | "third party directory that stores and provides the location of the location aware cellular phone" |

This term was added to the claims by amendment. The Applicant stated as follows:

> Independent claims **33**, **46**, and **48** have been amended to recite a satellite-based location-fixing protocol and a detection network directory vs a satellite-based location-fixing protocol, thus further narrowing the scope of the claim. The "detection network directory" appears in Figure 23. In Figure 23, item 2313 is referenced as a *THIRD PARTY LOCATION DETECTION NETWORK DIRECTORY*". The description of the "detection network directory" including "Third Party" is informative in the Applicants opinion because it differentiates over cell tower triangulation (which present application also covers), as a cellular service provider would not be considered a "Third Party". Figure 23 further references the "Third Party Location Detection Network Directory" in item 2356 *FATBUBBLE SYSTEM PERIODICALLY PINGS THIRD PARTY LOCATION DETECTION SERVICE FOR USER'S LOCATION INFORMATION*". This is further supported by paragraph [col 3 lines 48:52]: "*Sophisticated networks may fingerprint, triangulate or otherwise locate a wireless device based on radio signal characteristics. Sophisticated devices may include circuits that determine the device's location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol* ". Thomas / De Vries / Bezos are silent as to a "detection network directory".

Ex. 12, '704 Patent Prosecution History, 2/5/09 Amendment at 15.

The specification provides multiple examples of detection network directories. For example, "[w]alking in the door of a popular restaurant, nightclub or other location could trigger an interaction between a Bluetooth device and a ***Bluetooth access point*** sponsored at the location. The Bluetooth device ***could learn the location visited*** and report the location . . ." '543 Patent at 3:32-37. "Several equivalent methods of associating a portable device with the location are available. Sophisticated networks may fingerprint, triangulate or otherwise locate a wireless device based on radio signal characteristics. Sophisticated devices may include circuits that determine the devices location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol." *Id.* at 3:46-52. An "independent service may be used to track locations visited by user based on any of the protocols identified above or any other protocol." *Id.* at 3:54-56. With reference to Fig. 23, the specification states "[i]t is necessary for the user to have a wireless device 2354, which supports a location detection service. The support may be by Bluetooth, GPS or any other location detection technology. . . A location network directory 2312 is accessible, which ***reflects*** location of wireless devices 2354 and contains information ***such as*** the devices location address, location description, timestamp and a user ID 2358." *Id.* at 16:56 - 17:2.

Thus, the specification discloses a broad array of detection arrangements and directories, including those where the directory has a particular wireless devices location and others where the directory (e.g., provided in connection with an access point) provides information regarding an associated wireless device that the location-aware device may use to determine its location. Thus, unlike Defendants' construction, the directory need not have the location stored of **the** location aware device. Rather, it need only contain information that reflects on the location of wireless devices (e.g., access points, etc.). In other words, the "detection network directory" may contain data corresponding to detectable characteristics of certain devices (e.g., Bluetooth access points) and associated geographical locations. When the location-aware device obtains information regarding a wireless device in the "detection network directory," it can derive its own geographical

location by reference. The "detection network directory" itself need not store the location of the location-aware device.

Thus, Ikorongo's proposed construction that includes "a network directory which reflects the location of wireless devices" is appropriate. The remainder of the construction comes from the Applicant's clarification during prosecution that the term "differentiates over cell tower triangulation (which present application also covers) . . ." Ex. 12, '704 Patent Prosecution History, 2/5/09 Amendment at 15. Thus, the Applicant made clear that cell tower triangulation is included within the invention, but a detection network directory requires something further.

Finally, Defendants have taken inconsistent positions. Samsung and LG have submitted IPR Petitions in which they have argued that no construction of this term is necessary, and their theories of invalidity are not addressed under their proposed construction here. Exs. 9, 10, 11 (excerpts from Samsung/LG Petitions for IPR). Thus, Defendants are wrongly seeking a broader construction before the PTAB and a more narrow construction here, despite the fact that both tribunals use the same claim construction standard, as the PTAB has stopped using "broadest reasonable interpretation" for existing patent claims and instead uses the same standards as this Court.

### 6. "recorded by the location-aware cellular phone device using a satellite-based location-fixing protocol and a detection network directory" ('704 patent, claims 33, 46, 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "recorded by the location-aware cellular phone device using both a satellite-based location-fixing protocol and a detection network directory" |

Ikorongo submits the plain and ordinary meaning should control here, as Defendants' construction can only serve to inject ambiguity into an otherwise clear term. The disputed phrase uses the conjunctive "and," but that does not mean that every item recorded must be done by both

a satellite-based location-fixing protocol and a detection network directory. Rather, the claim requires the capability to use both. A good analogy would be a claim that required "recording golf scores with a pencil, eraser and score card." Obviously, the eraser would not be required for every recordation, but the claim would require the capability of using the eraser. Likewise, a location-aware cellular phone may at one time record its location via the "detection network directory" by detecting the signature of a nearby wireless device (e.g., a Bluetooth device) and/or via the satellite-based location-fixing protocol, but at another time may not detect any nearby wireless device from which it can derive its location. A location aware device may then record its location using only the satellite-based location-fixing protocol, while still retaining the capability to use the detection network directory.

As noted above, this requirement was introduced into the claims by amendment. The Applicant stated "independent claims 33, 46, and 48 have been amended to recite a satellite-based location-fixing protocol and a detection network directory vs. a satellite-based location-fixing protocol, thus further narrowing the scope of the claim." Ex. 12, '704 Patent Prosecution History, 2/5/09 Amendment at 15. The Applicant noted that the applied prior art "Thomas/De Vries/Bezos are silent as to a 'detection network directory'." *Id.* Thus, the prosecution history does not demand that every instance of recording include both systems, but rather the capability to use both.

Defendants' construction merely confuses the matter, and the plain and ordinary meaning should control.

7. **"enabling definition of rights of the one or more buddies to access the visited geographic location data" ('543 Patent claims 32, 54, 73, 75);**
**"enable definition of rights of the one or more other users to access the visited geographic location data" ('543 Patent claim 72);**
**"enabling definition of access rights for the one or more other users to access the visited geographic location data" ('543 Patent claim 48) ('704 Patent claim 33);**
**"enable definition of access rights for the one or more other users to enable access to the visited geographic location data" ('543 Patent claims 45, 46, 47, 49, 51); ('704 Patent claim 46);**
**"enable definition of access rights for the one or more other users to allow for access to the visited geographic location data" ('704 Patent claim 48);**
**"enable definition of rights of the one or more other users to access the visited geographic location data" ('543 patent claim 39);**
**"enable the user to define rights of the one or more other users to access the visited geographic location data" ('543 patent claim 56)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "allow[ing] the user to grant permission for one or more [other users/buddies] to access selected categories of the visited geographic location data" |

Defendants once again seek to import limitations into the claims from the specification or elsewhere without sufficient justification.

First, Defendants seek to construe multiple differently worded limitations with a single construction. Defendants offer no explanation as to why different terms should all mean the same thing.

Second, Defendants wrongly introduce the requirement of "allowing *the user to grant* permission." But this is not required by the claim language. Indeed, while all Defendants have offered the same construction for a litany of claim terms, they ignore the distinction between '543 Patent claim 56 and the other claims. Claim 56 expressly recites the limitation: "enable *a user* to define rights," while none of the limitations for the other claims do so. Yet, Defendants nonetheless assert that "the user" must grant the permission in all the claims. Under Defendants' faulty theory the recitation of "a user" in claim 56 would be superfluous, which would lead to a

legally erroneous construction. *See, Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"). Defendants provide no sound basis to adopt such a disfavored construction.

Third, Defendants seek to limit the "definition of rights" to "permission for one or more other users/buddies to access ***selected categories*** of the visited geographic data," but the claim language, specification and prosecution history do not compel this narrowing. Indeed, most of the claims at issue for this term do not even recite "categories," thus Defendants' construction would create confusion, as opposed to clarity, for a lay jury.

The plain and ordinary meaning of these terms should control.

### 8. Whether the Preambles of the '543 Patent, Claims 45-49, 51, 72 and the '704 Patent, Claims 46 and 48 are Limiting

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Limiting | Not Limiting |

A "claim preamble has the import that the claim as a whole suggests for it. In other words, when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). It is also well established that a preamble which provides "antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1367 (Fed. Cir. 2020) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

Here, each of the preambles at issue provide an antecedent basis for other terms in the body of the claim and thus are limiting. For example, the preamble of '543 Patent Claim 45 states "A non-transitory computer-readable medium storing software for instructing ***a controller of a location-aware device*** that is capable of being registered with a registration server." The body of the claim then recites the limitations "collect the visited geographic location data for geographic locations visited ***by the location-aware device***" and "wherein . . . ***the software*** further instructs ***the controller*** of ***the location-aware device*** to receive . . ." It is thus clear that "the" location-aware device in the body of the claim is the one recited in the preamble, *i.e.*, "the" location-aware device that is capable of being registered with a registration server. A similar analysis applies to '543 Patent claims 46-49, 51 and 72.

With respect to the '704 Patent, the preamble of claim 48 recites "A non-transitory computer-readable medium storing software for instructing a controller of ***a location-aware cellular phone device*** that has registered with the registration server to." The body of the claim goes on to recite "collect the visited geographic location data for geographic locations visited by ***the location-aware cellular phone device***" and "***the location-aware cellular phone device*** using a satellite-based location-fixing protocol and a detection network directory." Once again, the preamble provides the antecedent basis for "the" location-aware cellular phone device, *i.e.*, "the" location-aware cellular phone device that has registered with the registration server. A similar analysis applies to '704 Patent Claim 46.

9. **Bumble/Lyft Only Terms:** **"obtain defined rights of the one or more other users to access the visited geographic location data" ('543 patent claims 55, 71); "obtaining access rights for one or more other users to allow for access to the visited geographic location data" ('543 patent claims 57, 70)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "grant[ing] permission for one or more other users to access selected categories of the visited geographic location data" |

Bumble and Lyft offer the same construction for these terms as the Defendants did for the terms in Section III, A, 7 above. For the same reasons, Bumble/Lyft's construction should be rejected, and the plain and ordinary meaning should control.

**B. '554 Patent (Samsung and LG only)**
1. **"receive an identification of a geographic area" / "receiv[e/ing], via the user device, an identification of a geographic area" ('554 patent claims 1, 17, 33)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "receive/[ing] from a user of the user device an identification of a geographic area" |

Defendants again seek to read limitations from the specification or elsewhere into a claim term that requires no construction beyond the plain and ordinary meaning. Defendants seek to add the requirement that the identification of a geographic area is received "from a user of the user device." Defendants have provided no basis for this position.

While the claims include embodiments where the device receives user input, they are not so limited. For example, while independent claim 1 recites "a location determination component adapted to receive an identification of a geographic area," dependent claim 3 recites the device of claim 1 "wherein the location determination component is adapted to determine the current location of the user device." In contrast, dependent claim 7 recites the device of claim 1 "wherein

the location determination component is adapted to receive information representing selection of the geographic area via the user interface." Thus, while Defendants' construction might be relevant for claim 7 it would exclude the embodiments of claim 3. Yet, claim 1 must cover both.

Moreover, Samsung and LG have affirmatively refuted this interpretation in their IPR submission, arguing no construction is necessary, while at the same time applying prior art in a manner that they would contend is not met under their own construction. Ex. 13, '554 IPR Petition.

Accordingly, the court should adopt the plain and ordinary meaning for this term as it will be readily understood by a lay jury.

## IV. CONCLUSION

For at least the foregoing reasons, Ikorongo respectfully requests that the Court construe the disputed terms as proposed by Ikorongo.

| Dated: December 2, 2020 | Respectfully submitted, |
|---|---|
| | */s/ Derek Gilliland* _____ |
| | **DEREK GILLILAND** |
| | State Bar No. 24007239 |
| | **SOREY, GILLILAND & HULL, LLP** |
| | P.O. Box 4203 |
| | 109 W. Tyler Street |
| | Longview, TX 75601 |
| | Tel: 903.212.2822 |
| | Tel: 903.212.2864 |
| | derek@soreylaw.com |
| | |
| | **HOWARD N. WISNIA** |
| | CA State Bar No. 184626 |
| | **WISNIA PC** |
| | 12770 High Bluff Drive, Suite 200 |
| | San Diego, CA 92130 |
| | Tel: 858.461.0989 |
| | howard@wisnialaw.com |

|  | **KARL RUPP** |
|  | State Bar No. 24035243 |
|  | **NIX PATTERSON, LLP** |
|  | Advancial Building |
|  | 1845 Woodall Rodgers Freeway, Suite 1050 |
|  | Dallas, TX 75201 |
|  | Tel: 972.831.1188 |
|  | Fax: 972.444.0716 |
|  | krupp@nixlaw.com |
|  | |
|  | ***COUNSEL FOR PLAINTIFFS*** |

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 2, 2020, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Derek Gilliland*
Derek Gilliland