# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| IKORONGO TEXAS LLC and<br>IKORONGO TECHNOLOGY LLC,<br><br>Plaintiffs,<br>vs.<br>BUMBLE TRADING LLC,<br><br>Defendant. | Civil Action No. 6:20-cv-00256-ADA<br><br>**JURY TRIAL DEMANDED** |
| IKORONGO TEXAS LLC and<br>IKORONGO TECHNOLOGY LLC,<br><br>Plaintiffs,<br>vs.<br>LG ELECTRONICS INC., and<br>LG ELECTRONICS U.S.A., INC.,<br><br>Defendants. | Civil Action No. 6:20-cv-00257-ADA<br><br>**JURY TRIAL DEMANDED** |
| IKORONGO TEXAS LLC and<br>IKORONGO TECHNOLOGY LLC,<br><br>Plaintiffs,<br>vs.<br>LYFT, INC.,<br><br>Defendant. | Civil Action No. 6:20-cv-00258-ADA<br><br>**JURY TRIAL DEMANDED** |
| IKORONGO TEXAS LLC and<br>IKORONGO TECHNOLOGY LLC,<br><br>Plaintiffs,<br>vs.<br>SAMSUNG ELECTRONICS CO., LTD.,<br>and SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br>Defendants. | Civil Action No. 6:20-cv-00259-ADA<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION…………....…………………………………………………1

II.   CLAIM CONSTRUCTION….....……………………………………………1

A.   The Reissue Patents………………………………………………1

  1.   "record[s/ed]" ('450 Patent, claim 67; '543 Patent, claims 32, 39, 54-57, 71-73, 75; '704 Patent, claims 33, 46, 48) ……………………..1

  2.   "collect the visited geographic location data for geographic location data for geographic locations visited by the location aware device" ('543 Patent, claims 45-49, 51; '704 Patent, claims 46 and 48) ……………………………………………2

  3.   "categories" ('450 patent, claim 67; '543, patent claim 46; '704 patent, claims 36 and 37) …………………………………3

  4.   "comments" ('543 patent, claim 51)……………………………4

  5.   "detection network directory" ('704 patent, claims 33, 46, 48)……………4

  6.   "recorded by the location-aware cellular phone device using a satellite-based location-fixing protocol and a detection network directory" ('704 patent, claims 33, 46, 48) ……………8

  7.   "enabl[e/ing] definition . . ." ('543 Patent Claims 32, 39, 46-49, 51, 54, 56, 72, 73, 75; '704 Patent Claims 33, 46, 48) "enable the user to define . . ." ('543 patent claim 56)……………………9

  8.   Whether the Preambles of the '543 Patent, Claims 45-49, 51, 72 and the '704 Patent, Claims 46 and 48 are Limiting……………………………………………12

  9.   Bumble/Lyft Only Terms:  "obtain defined rights of the one or more other users to access the visited geographic location data" ('543 patent claims 55, 71); "obtaining access rights for one or more other users to allow for access to the visited geographic location data" ('543 patent claims 57, 70)……………………………………13

B.   '554 Patent (Samsung and LG only)…..……………………………14

i

      1.    "receive an identification of a geographic area" / "receiv[e/ing], via the user device, an identification of a geographic area" ('554 patent claims 1, 17, 33) ……………………………………………14

III.    CONCLUSION……...……………………….……………………………………15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006)....................................................................................... 1

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
  958 F.3d 1348 (Fed. Cir. 2020)..................................................................................... 13

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197, 1204 (Fed. Cir. 2010)........................................................................ 2, 8

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
  977 F.3d 1212 (Fed. Cir. 2020)....................................................................................... 2

*Johnson Worldwide Assocs. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999)....................................................................................... 11

*Karlin Tech., Inc. v. Surgical Dynamics*,
  177 F.3d 968 (Fed. Cir. 1999)......................................................................................... 4

*Neomagic Corp. v. Trident Microsystems, Inc.*,
  287 F.3d 1062 (Fed. Cir. 2002)..................................................................................... 12

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003).................................................................................. 2, 10

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002).................................................................................. 5, 10

*Thorner v. Sony Comp. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).................................................................................. 3, 10

*TomTom, Inc. v. Adolph,*
  790 F.3d, 1315 (Fed. Cir. 2015)................................................................................... 12

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007)....................................................................................... 5

*Vitronics Corp. v. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996)................................................................................. 14

*Wasica Fin. GmbH v. Cont'l Auto Sys.,*
  853 F.3d 1271 (Fed. Cir. 2017).............................................................................. 1, 4

## I.    INTRODUCTION

Defendants wrongly attempt to read limitations from the specification, prosecution history and other undisclosed locations into the claims. But as demonstrated in Ikorongo's opening brief and below, Plaintiffs' constructions most naturally align to the intrinsic evidence and should be adopted.

## II.    CLAIM CONSTRUCTION

### A.    The Reissue Patents

#### 1.    "record[s/ed]" ('450 Patent, claim 67; '543 Patent, claims 32, 39, 54-57, 71-73, 75; '704 Patent, claims 33, 46, 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "preserve[s/ed] for later reporting [or sharing][1]" |

Defendants' construction deviates from the plain and ordinary meaning and imports unrecited requirements. Defendants allege this is compelled by claim language distinct from the term at issue here: "[e]ach of the claims [33, 46, 48 of the '704 Patent] then requires the invention to 'report[] information indicating the visited geographic data.'" Defs. Br. at 4. But this additional claim language prevents the conclusion that "record[s/ed]" inherently includes reporting. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("different claim terms are presumed to have different meanings"). The importation of "reporting" into recording would impermissibly render superfluous the express reporting language. *See Wasica Fin. GmbH v. Cont'l Auto Sys.*, 853 F.3d 1271, 1288 n.10 (Fed. Cir. 2017) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous").

Defendants next wrongly argue that "record[s/ed]" requires "later" reporting based on the '704 Patent prosecution history. Defs. Br. at 4-5.   First, Defendants do not even assert clear and

---

[1] Defendants altered their construction of this term after Plaintiffs' opening brief. Defs. Br. at 3 n. 2.

unmistakable surrender.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  Second, the prosecution history undermines Defendants' argument.

The Patentee did not distinguish Thomas based on timing of reporting, but instead argued against the three-reference combination of DeVries/Bezos/Thomas in part by noting that it does not disclose "recording" at all: "Thomas does not describe or suggest **recording** its location information by its mobile unit, as claim 33 requires, but instead, describes **forwarding** the location information to a monitoring server for recordation."  Op. Br., Ex. 7 at 21-22.[2]  In fact, Patentee actually cited the specification's teaching of immediate or later reporting. *Id.* (quoting specification statement that the "device could . . . report that location **immediately or later**").  Defendants nonetheless argue that Patentee's mention that the "claimed **exemplary** embodiment" operated such that "recorded data **may be** preserved and then later reported." *Id.* at 22.  This is not clear and unmistakable surrender.

Next, Defendants present a strawman argument concerning temporary or transitory storage that is nowhere found in the specification or prosecution history.  Defs. Br. at 5-6.  There was no discussion of or reliance on "transitory storage" in the prosecution or the specification.

Defendants' extrinsic evidence does not overcome (or refute) the intrinsic evidence. *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212 (Fed. Cir. 2020) (holding that intrinsic evidence has priority over inconsistent extrinsic evidence).

Finally, Defendants offer no rationale for substituting "preserve" for "record," which has a plain and ordinary meaning.  *See, Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (explaining that a district court is "not obligated to provide additional guidance to the jury" where the terms are already clear and understandable to the jury).

### 2. "collect the visited geographic location data for geographic location data for geographic locations visited by the location-aware device" ('543 Patent, claims 45-49, 51; '704 Patent, claims 46 and 48)

---

[2] Unless otherwise noted, all emphasis is added in this brief.

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "accumulate for later reporting [or sharing][3] the visited geographic location data for locations visited by the location-aware device" |

Defendants admit that their construction of "collect" is not the plain and ordinary meaning of the term, or even consistent with the term's use in the patent. Defs. Br. at 8 n. 5 (attempting to limit construction of collect to this particular phrase, because collect is allegedly used differently elsewhere in the patent). In fact, Defendants' "later reporting" requirement here is even more tenuous than in connection with "record." They cite no prosecution history concerning "collect" and admit the specification does not support their argument. *Id.* Their position also fails for the reasons mentioned in the "record[s/ed]" section, *supra.* Finally, Defendants provide no rationale why the easily understood term "collect" should be replaced with "accumulate." *See, Finjan*, 626 F.3d at 1207.

### 3.   "categories" ('450 patent, claim 67; '543, patent claim 46; '704 patent, claims 36 and 37)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "content-based classification[s]" |

Defendants do not contest that "categories" has a plain and ordinary meaning or that Defendants' construction is narrower than that meaning. Defs. Br. at 9-11. Yet Defendants ignore *Thorner v. Sony Comp. Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012), and do not allege that Patentee acted as its own lexicographer or disavowed the full scope of the claim in the specification or during prosecution.

The specification demonstrates that "categories" includes but is not limited to "content-based" categories or classifications. For example, the specification repeatedly references "***content*** categories." *See, e.g.,* '543 Patent at 18:22-24, 48-49.[4] If the term "categories" was already limited

---

[3] Defendants altered their construction after Plaintiffs' opening brief was filed.
[4] Defendants also fail to explain how their construction squares with the specification's use of "location categories" instead of "content categories." '543 Patent at 17:32.

to content-based categories, the "content" modifier would be superfluous. *See Wasica,* 853 F.3d at 1288 n.10. Thus, the specification's disclosure that access may be restricted based on "content categories" or "when the activity potentially accessed took place" are examples of various "categories." *Id.* at 18:21-32. Moreover, Defendants ignore claim differentiation, as their position is inconsistent with claims 1, 16 and 31 of the original '139 Patent (independent claim 1 reciting "categories," while dependent claim 16 narrows the claim to "content category;" independent claim 31 reciting "content category."). *See Karlin Tech., Inc. v. Surgical Dynamics*, 177 F.3d 968, 971-72 (Fed. Cir. 1999) ("different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.").

### 4.   "comments" ('543 patent, claim 51)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "Written text; not solely an emoticon or rating" | "user-generated remarks" |

Plaintiffs refer to their opening brief.

### 5.   "detection network directory" ('704 patent, claims 33, 46, 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a network directory which reflects the location of wireless devices not solely based on cellular tower triangulation" | "third party directory that stores and provides the location of the location aware cellular phone" |

Defendants' construction does not align with the claim language, specification or prosecution history and should be rejected. First, it ignores the term network in "detection ***network*** directory." Second, it wrongly reads "third party" into the claim, while misconstruing the specification examples where "third party" modifies the location detection data – not the directory itself. Third, it requires the directory itself to affirmatively "provide" the location of ***the*** location aware cellular phone.

First, as described in Plaintiffs' opening brief, the specification teaches the use of network items (e.g., Bluetooth access points, and sophisticated networks using fingerprinting, GPS, Loran, etc.).  Op. Br. at 12.  The detection network directory may include information that reflects the location of such wireless devices.  Defendants ignore this language.

Second, Defendants' "third party" requirement is incorrect.  The particular embodiment of Fig. 23 does illustrate a "***third party location*** detection network directory."  Yet, the claim language does not recite "third party."  '704 Patent at Claims 33, 46, 48.  Obviously, the term "detection network directory" is not inherently limited to "third party" arrangements or the modifier language would be meaningless or superfluous.  Rather, Defendants are committing the "cardinal sin" of claim construction by seeking to import a "third party" requirement from the specification into the claims. *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1324 (Fed. Cir. 2002).

Neither the specification nor prosecution history require or permit such importation. The specification does not redefine the term or narrowly define all detection networks as being "third party."  In fact, it describes "location detection network" and "location detection service" without a "third party" modifier.  *See, e.g.,* '704 Patent at 17:20-21, 29-30.  It also describes a "detection network directory" that ***"can"*** store third party location detection data.  *Id.* at 4:54-55.  But that does not mean it ***must*** or that the directory itself is "third party."[5]  The prosecution history does not contain (and Defendants do not even allege) a clear and unmistakable disclaimer "constitut[ing] a clear disavowal of claim scope" such that the directory is limited to third party directories. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007).

In any event, Defendants' proposal is inconsistent with how "third party" is used in the specification.  "Third party" is used exclusively to modify "location detection," "location detection data," or "data" – not the directory itself.  '704 Patent at 4:54-57; Fig. 23, elements **2312**, **2356**.  While the directory ***could*** be a third party's, the claims do not require that.  Defendants ignore this

---

[5] It is unclear what Defendants even mean by a "third party directory," and Ikorongo takes no position on what Defendants currently mean.

point, and attempt to obfuscate it by omitting "location" from their direct quotations of the specification: "Figure 23 describes the detection network directory as a 'Third Party Detection Network Directory.'" Defs. Br. at 14.  But as noted above, the actual language is "Third Party **Location** Detection Network Directory."  Element **2356** from Figure 23 likewise provides a "***third party location detection*** service" - again using the term "third party" to modify location detection, not "directory."

Defendants' construction is inconsistent with its own prosecution history argument. Defendants cite the Applicant's explanation that "***including 'Third Party is informative*** in Applicant's opinion ***because it differentiates over cell tower triangulation (which present application also covers), as a cellular service provider would not be considered a 'Third Party.'***" Defs. Br. at 14-15.  This does not support Defendants' "third party directory" requirement.  Rather, the Applicant opined that a network directory including ***only*** location data relating to cell tower triangulation of a non-third party would not qualify as "Third Party data." Op. Brief, Ex. 12 at 15. The specification provides examples of third party location data, such as "[w]alking in the door of a . . . location could trigger an interaction between a Bluetooth device and a ***Bluetooth access point*** sponsored at the location.  The Bluetooth device ***could learn the location visited*** and report the location immediately or later . . ." '704 Patent at 3:46-51.  "Alternatively, the Bluetooth device could disclose its identity to a Bluetooth access point at a particular location and the access point could report the visit." *Id.* at 53-55.  The Bluetooth access point is not part of the cellular network, but rather is part of a "third party" network.  In contrast to Defendants' proposal, Ikorongo's construction aligns precisely with this description by stating that the directory reflects the location of wireless devices "not solely based on cellular tower triangulation."

Third, Defendants wrongly argue that the detection network directory must "store and provide ***the location*** of ***the*** location aware cellular phone." Defs. Br. at 15. In alleged support, Defendants cite the patent's description that the directory "***reflects location of wireless devices 2343*** . . .'" and that in the preferred embodiment "[w]ireless device*s* 2343 ***include*** the user's location-aware cellular device." *Id.* But Defendants' construction misconstrues the language and

6

seeks to import limitations from the specification into the claim. One, "reflect[ing] location" is not the same thing as providing the actual location. A person's use of the term "youse guys" might reflect the location of their upbringing in the North, but does not provide the exact location of their birth. Unlike Defendants', Plaintiffs' proposed construction uses the actual "reflects" language. Two, the fact that in an embodiment of the specification the user's device may be included among other wireless devices, does not mean that directory is limited to that user's device or must store its actual location. The claims are not so limited and in fact the specification describes other embodiments as noted above. Three, Defendants' extra requirement that the network directory "provides location" only adds confusion, as the network directory need not store "location."

Ikorongo's construction is more appropriate, as it accounts for the various information that the detection network directory may contain. To wit, the specification provides that the network directory contains information "***such as*** the devices' location address, location description, timestamp, and a user ID 2358." *Id.* at 17:1-2. The specification's use of the non-limiting language "such as" demonstrates that the information reflecting location may vary depending on whether location detection is achieved, *e.g.,* using "Bluetooth, GPS, or any other location detection technology." *Id.* at 16:56-59. While information in the network directory ***reflects*** the location of wireless devices, the network directory need not contain the location itself as explained above. This use of "reflects" was not arbitrary. While the location of a Bluetooth access point may act as a proxy for the location of a Bluetooth phone that detects it, a person of ordinary skill in the art would appreciate technically that they are not the same (e.g., the phone could be 7-30 feet away).

Finally, Defendants mischaracterize Ikorongo's arguments regarding the "detection arrangements and directories" disclosed in the specification. Defs. Br. at 15. Ikorongo has not argued that a "Bluetooth access point," "sophisticated network," or "independent service" ***is*** a "detection network directory" (although a "detection network directory" could be a part of a sophisticated network or independent service, and/or could be accessible through a Bluetooth access point). *Id.*

### 6. "recorded . . . using a satellite-based location-fixing protocol and a detection network directory" ('704 patent, claims 33, 46, 48)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "recorded by the location-aware cellular phone device using both a satellite-based location-fixing protocol and a detection network directory" |

This dispute centers on whether the cellular phone *must actually record* "*each and every geographic location visited*" using "*both* a satellite-based location fixing protocol and a detection network directory" (Defendants' position) or whether the claim requires the *capability* to use both.

First, Claims 46 and 48 are apparatus claims and thus necessarily directed to capabilities as opposed to actual performance. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("to infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode."). These claims require only that the computer readable medium include "software for instructing a controller to" perform the disputed claim language and thus must simply be capable of meeting the claim requirements.

Second, method claim 33 (and apparatus claims 46 and 48) merely requires that the *device* doing the recording *use* the satellite-based location-fixing protocol and the detection network directory. It does not require that *each* location actually be recorded using *both*. Defendants' arguments based on prosecution are inapt for the reasons discussed in Plaintiffs' opening brief. Further, Defendants' quotation at top of p. 18 is *not* from the office action (or even from the portion of the reference cited by the examiner). Defendants are creating a self-serving (and inaccurate) rejection. In short, Defendants are illogically arguing that Plaintiffs distinguished Thomas by requiring both items, while Defendants argue that Thomas teaches both items. *Id.* at 18.

Defendants' criticize Plaintiffs' golf score analogy for including three items. Defs. Br. at 19. It works just as well to say that a golf score is recorded using pencil and eraser. Another analogy would be an explorer circumnavigating the globe using maps and celestial navigation. If

at sea with no view of land, the explorer cannot use maps.  But closer to shore, he may use both.
The explorer has the capability to use both, but may not be use both each time.

> **7.  "enabl[e/ing] definition . . ." ('543 Patent Claims 32, 39, 46-49, 51, 54, 56, 72, 73, 75; '704 Patent Claims 33, 46, 48)**
> **"enable the user to define . . ." ('543 patent claim 56)[6]**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "allow[ing] the user to grant permission for one or more [other users/buddies] to access selected categories of the visited geographic location data" |

Defendants wrongly assert that *seven different phrases* that appear in *16 different independent claims*, across *two different patents* all *mean exactly the same thing*.  The claims are a variety of types: (1) computer readable media (CRM), (2) location aware mobile devices, and (3) various methods, yet Defendants insist on identical construction.

Defendants' construction contains a number of infirmities and should be rejected.  First, Defendants read into every limitation the requirement of granting permission "to access *selected categories* of the visited geographic location data."  Yet, of the 16 different claims at issue – only *one* even recites "categories." *See,* '543 Patent Claim 46.  None of the other claims recite that term. *See,* '543 Patent Claims 32, 39, 45, 47-49, 51, 54, 56, 72, 73, 75; '704 Patent Claims 33, 46, 48.

Moreover, claim 46 is a CRM claim that recites "enable definition of access rights for one or more other users to enable access to the visited geographic location data."  '543 Patent at 23:33-35.  This is *identical* to the language at issue in '543 Patent Claims 45 – 47, 49, 51.  However, unlike all the other claims at issue, claim 46 goes on to further narrow this limitation by reciting "wherein in order to enable the definition of the access rights . . ., the software further instructs the controller of the location-aware device to . . . *receive . . . input that defines one or more categories of the visited geographic location data that can be shared with the other user*."  '543 Patent at

---

[6] For brevity, the full terms have been abbreviated with ellipses.  The terms are listed in full in the opening brief.

23:41-49.  That is, the "categories" that Defendants argue must be included in *every* phrase is only expressly recited in *one* of the claims.  Similarly, none of the '704 Patent claim terms at issue recite "categories."  Yet dependent claim 36 (not at issue) narrows independent claim 33 (at issue) by expressly reciting similar "categories" language.  Defendants' theory violates the doctrine of claim differentiation and would render superfluous the expressly recited language of claim 46.

Second, Defendants read into every limitation at issue the affirmative requirement of "***the user***" granting "permission." However, only 1 of the 16 independent claims at issue recites "the user" as part of the definition or enablement of rights.  *Compare* '543 Claim 56 ("enable ***the user*** to define rights . . .").  In fact, this is the only non-grammatical difference between the relevant terms of '543 claims 56 and 72, further supporting claim differentiation.

Defendants' attempts to justify their construction fail.  First, Defendants note that the specification provides examples with categories.  Defs. Br. at 21-22.  But Defendants point to no lexicography or disclaimer to support their supposed narrowing and thus cannot support their position.  *Thorner,* 669 F.3d at 1365.  Defendants are impermissibly reading limitations from the specification into the claims.  *Teleflex,* 299 F.3d at 1324.  Defendants' dictionary definitions serve them no better as they do not provide a basis to override the intrinsic evidence.  Defs. Br. at 22.

Next, Defendants cite to various snippets of patent prosecution (often concerning claim language not at issue here) to attempt to bolster their position, but fail to even assert that Patentee used words of manifest exclusion or that there was a "clear and unmistakable" disclaimer.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  Moreover, these snippets do not support Defendants' position.  For example, Defendants argue that the Patentee distinguished the Watanabe reference in a manner that is relevant to its construction.  Defs. Br. at 22-23.  But Watanabe was wholly irrelevant.  As argued during prosecution, it did not relate to geographic data at all (it concerned photographs) and the only possible sharing was if a user gave another user their user ID and password; thus the reference did not teach or suggest many limitations of '543 claim 32 (which is different from the other 15 claims at issue) including a "***computer-implemented method*** of sharing computer usage experiences ***including*** . . .enabling definition of rights of the

one or more buddies to access the visited geographic location data." Ex. A ('543 Patent Prosecution, 2014-04-07 Amendment at 2, 20-23).  Defendants' arguments based on the Oliver reference fares no better.  Patentee argued Oliver does not teach "defining access rights for other users to access visited geographic location data of a user."  Def. Br. at 23 *quoting* Ex. A at 26.  "Selecting categories" was not mentioned at all.

Defendants then argue that prosecution of a ***different patent*** (RE45,351) compels its construction.  Defs. Br. at 23.  But the cited portion concerns different subject matter.  For example, while the claims for the terms at issue are client-side devices, the cited argument concerns a claim to a method of operating a tracking server which provides "access to the information indicating the computer usage experiences of the at least one user according to the access rights defined by the access control information for the at least one user."  *Id*.  Patentee argued that Stripe did not teach such subject matter because, *inter alia*, the language the examiner cited concerned authenticating contributors and did not address access rights to other user's information.  Defs. Ex. 15 at 22.  This argument does not shed light on or disclaim coverage for the '543/'704 patent claim limitation at issue.

Second, Defendants argue that each claim term at issue must require "allowing ***the user*** to grant permission" because "someone or something" must do it.  Defs. Br. at 20-21.  But claims are not required to list every possible element or step that would be necessary or helpful in a physical embodiment.  *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999) ("If we once begin to include elements not mentioned in the claim in order to limit such claims…, we should never know where to stop.").  The claims certainly cover enabling the user to define the rights, but they are not so limited (except for claim 56).  Defendants' prosecution history argument also fails.  Defs. Br. at 21.  Initially, Defendants do not even allege disclaimer based on Demello.  The cited prosecution history in no way requires (or even suggests) that the user must define the rights at issue.  Rather, Patentee observed that (irrespective of who or what defined the rights) Demello did not teach location information of one user being shared with other users.

11

Finally, Defendants wrongly attempt to justify their "one size fits all" 16 independent claims approach by asserting that certain preliminary infringement contention charts rely on similar evidence for different claims.  Defs. Br. at 24.  First, claim construction should not be done in view of the accused product but in view of the intrinsic evidence.  *See Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).  Second, the fact that one physical embodiment meets different claim language in no way means that the claim language is identical. For example, an accused product might be a yellow diesel cab.  One claim might recite a car with a diesel engine and a second claim might recite a livery vehicle that is painted yellow.  The same product meets both claims, but the claims are hardly identical.

### 8.  Whether the Preambles of the '543 Patent, Claims 45-49, 51, 72 and the '704 Patent, Claims 46 and 48 are Limiting

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Limiting | Not Limiting |

The preamble of '543 Patent claim 45 recites a "non-transitory computer-readable medium storing *software* for *instructing a controller of a location-aware device* that is capable of being registered with a registration server to."  The body of the claim then recites "collect the visited geographic location data for geographic locations visited *by the location-aware device*" and "wherein . . . *the software further instructs the controller* of *the location-aware device* to receive . . ." '543 Patent at Claim 45.  The claim body thus makes clear that "the location aware device" is not just *any* such device, but "*the*" location aware device of the preamble, which (1) has a controller being instructed by the software and (2) is capable of being registered with a registration server.  *See, TomTom, Inc. v. Adolph,* 790 F.3d, 1315, 1323 (Fed. Cir. 2015) (noting the "claims do not concern just any 'mobile unit,' but rather [the one that is part of the destination tracking system of the preamble].")

Defendants cite *TomTom* to argue that entire preamble here is not limiting, but in that case the other portion of the preamble ("a method for generating and updating data for use in …")  was

solely directed to intended use and did not provide antecedent basis for claim body terms. *Id.* at 1322-23. Defendant's reliance on *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348 (Fed. Cir. 2020) is also misplaced. The court held the disputed preamble portion non-limiting because it "is merely a statement of intended use of the claimed hearing aid. It identifies no structure . . . ." *Id.* at 1355.

Defendants wrongly assert that the preamble is "merely duplicative" of the body of the claim. Defs. Br. at 25. The claim body uses shorthand versions of the preamble terms (e.g., by reciting "the" location aware device) without repeating the full preamble language. This antecedent basis approach demonstrates that the preamble is limiting.

Defendants argue that because the limitations (1) "non-transitory computer-readable medium storing software for instructing a controller" and (2) "capable of being registered with a registration server" "are [allegedly] separable from a 'location aware [cellular phone/mobile] device" those terms should not be limiting. Defs. Br. at 26-27. That is simply false. "Software," and "controller" in addition to "location aware device" is recited in the bodies of the claims and should thus be limiting. A similar analysis is applicable to 46-49 and 51 of the '543 Patent. With respect to '543 claim 72, the "controller" language is recited in the body of the claim as well. Regarding the '704 patent, a similar analysis applies. The "location-aware cellular phone device" is recited and relied upon in the body of the claims 46 and 48.

9. **Bumble/Lyft Only Terms: "obtain defined rights of the one or more other users to access the visited geographic location data" ('543 patent claims 55, 71); "obtaining access rights for one or more other users to allow for access to the visited geographic location data" ('543 patent claims 57, 70)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "grant[ing] permission for one or more other users to access selected categories of the visited geographic location data" |

Defendants delete the "the user" requirement, but otherwise argue for the same construction as in Section 7 above. For the same reasons, Defendants' construction should be

rejected.  For example, none of claims 55, 57, 70 or 71 recites categories, yet claim 58 *expressly* limits claim 57 by reciting "the access rights . . . comprises . . . information that defines one or more categories . . ." Thus, claim differentiation again refutes Defendants' position.

### B. '554 Patent (Samsung and LG only)

1. **"receive an identification of a geographic area" / "receiv[e/ing], via the user device, an identification of a geographic area" ('554 patent claims 1, 17, 33)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "receive/[ing] from a user of the user device an identification of a geographic area" |

Defendants again seek to import limitations from the specification into the claims.  This time wrongly (and irrelevantly) asserting that "the specification does not disclose receiving an identification of a geographic area from anything but a user." Defs. Br. at 29.

Yet, the specification teaches that "[t]he location determination function **38-1** generally operates to obtain the location of the device **14-1** . . .  As an example, the location determination function may be a Global Positioning System (GPS) receiver." '554 Patent at 7:40-41.  This compares nicely to the limitation in dispute: "a location determination component adapted to receive an identification of a geographic area." '554 Patent at Claim 1.  The specification elsewhere discloses that certain media may be selected based on the ***current location*** of the user. *See, e.g, id.* at 10:33-46.

Moreover, '554 Patent Claim 1 claims priority U.S. Patent No. 8,060,525, which is incorporated by reference.  The '525 Patent specification discloses an embodiment that "media recommendation request may be sent with seed information, such as the device's current location." Ex. B, '525 Patent at 5:6-8.  In fact, the '525 does not expressly illustrate an embodiment for receiving the location any other way.  Defendants' proposed construction would exclude these embodiments. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) (interpretation that excludes preferred embodiments is "rarely, if ever, correct").

Defendants attempt to deflect by confusion the fact that their construction of Claim 1 would exclude the embodiment of its dependent Claim 3.  Defs. Br. at 29-30.  They admit that "the location determination component can be adapted to determine the current location of the user" but argue that it must "*also* receive from a user of the user device an identification of a geographic area." Defendants offer  no cogent rationale for this position, instead constructing a strawman that Ikorongo's position (of plain and ordinary meaning) "allows receiving an identification of a geographic area ***without any action*** by the user of the user device."  *Id.* at 30.  Ikorongo has not taken that position.  Instead, the claim term means what it says, and does not require the "identification of a geographic area" come from the user.

## III.   CONCLUSION

For at least the foregoing reasons, Ikorongo respectfully requests that the Court construe the disputed terms as proposed by Ikorongo.

Respectfully submitted,

*/s/ Howard Wisnia*

HOWARD WISNIA
*howard@wisnialaw.com*
WISNIA PC
12770 High Bluff Drive, Suite 200
San Diego, California 92130
858.461.0989

DEREK GILLILAND
State Bar No. 24007239
*derek@soreylaw.com*
SOREY, GILLILAND & HULL, LLP
P.O. Box 4203
109 W. Tyler Street
Longview, Texas 75601
903.212.2822 - Telephone
903.212.2864 - Telephone

**KARL RUPP**
State Bar No. 24035243
*krupp@nixlaw.com*
**NIX PATTERSON, LLP**
Advancial Building
1845 Woodall Rodgers Freeway, Suite 1050
Dallas, Texas 75201
972.831.1188 - Telephone
972.444.0716 - Facsimile

**JEFFREY ANGELOVICH**
State Bar No. 00786988
*jangelovich@nixlaw.com*
**BRADLEY BECKWORTH**
State Bar No. 24001710
*bbeckworth@nixlaw.com*
**NICHOLAS WYSS**
State Bar No. 24071459
*nwyss@nixlaw.com*
**NIX PATTERSON, LLP**
3600 N. Capital of Texas Hwy, Bldg. B, Suite 350
Austin, Texas 78746
512.328.5333 - Telephone
512.328.5335 - Facsimile

***COUNSEL FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 8, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Howard Wisnia*
Howard Wisnia